```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>[2] JANVIERE RODRÍGUEZ-CEPEDA,<br><br>**Defendant**. | CRIM. NO. 23-0251 (RAM) |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Janviere Rodríguez-Cepeda's *Motion Requesting Review of Detention Order and Request for De Novo Detention Hearing* ("*Motion*"). (Docket No. 30). For the reasons set forth below, the Court **GRANTS** Defendant's *Motion* subject to the conditions specified herein and in the separate order of release.

## I.   BACKGROUND

On June 28, 2023, a Grand Jury indicted Mr. Rodríguez on two counts:

- Carjacking in violation of 18 U.S.C. §§ 2119 and 2 (Count 1);

- Use, Carry, and Brandish of a Firearm During and in Relation to Crimes of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count 2);

(Docket No. 3).

The Amended Pretrial Services Report published July 5, 2023

recommended that Defendant be detained pending trial on flight risk and dangerousness grounds. (Docket No. 15 at 6-7). On July 7, 2023, Magistrate Judge Marcos E. López ordered Defendant detained pending trial. (Docket No. 23). He concluded that Mr. Rodríguez had not introduced sufficient evidence to rebut the 18 U.S.C. § 3142(e)(3) presumption present in this case. Id. at 2. Magistrate Judge López found that the Government had proven by clear and convincing evidence that no conditions of release would reasonably assure the safety of the community. Id. He cited the weight of the evidence against Defendant. Id. at 2-3.

On August 3, 2023, Defendant filed the present *Motion* seeking *de novo* review of his detention order. (Docket No. 30). The *de novo* hearing was held on October 11, 2023. (Docket No. 33). The Government proceeded by proffer and argued both flight risk and danger to the community. Defendant argued to the contrary.

After considering the evidence, the Court finds that Defendant has introduced sufficient evidence to rebut the section 3142(e)(3) presumption and that the Government has not proven by the relevant standards that no conditions of release could reasonably assure the safety of the community and Defendant's appearance as required.

## II. LEGAL STANDARD

### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

### B. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984 (the "Act"), a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e).

#### 1. Standard of proof

The standard of proof for detention on the grounds of dangerousness is **clear and convincing evidence**. Id. § 3142(f). Clear and convincing evidence is "more than preponderance of the

evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

### 2. Factors the Court must consider

18 U.S.C. § 3142(g) sets forth the factors judicial officers must consider when determining whether there are conditions of release that assure a defendant's appearance and the safety of the community. These factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

### 3. The 18 U.S.C. § 3142(e) presumption

18 U.S.C. § 3142(e) creates a rebuttable presumption that no conditions can reasonably assure the appearance of the defendant and the safety of the community where there is probable cause that a defendant has committed one of the crimes listed in the statute or in the other circumstances set forth therein. United States v.

Vargas-Reyes, 220 F. Supp. 3d 221, 225 (D.P.R. 2016) (citing 18 U.S.C. § 3142(e)(3)). A grand jury indictment alone suffices to trigger the presumption. Id. (citing, *inter alia*, United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986)).

Once triggered, the 18 U.S.C. § 3142(e)(3) presumption imposes on the defendant a burden of production. Id. The defendant may satisfy this burden of production by introducing at least some evidence contrary to the facts presumed. Id. For that reason, "[t]he burden is not heavy." Id. Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. Id.

However, the 18 U.S.C. § 3142(e)(3) presumption does not simply vanish once a defendant has produced some evidence. *See* United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987); United States v. Jessup, 757 F.2d 378, 383-84, 387 (1st Cir. 1985), *partially abrogated on other grounds by* United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990). Instead, judges must keep the presumption in mind as an additional factor to the four listed in section 3142(g). *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387.

### III. DISCUSSION

#### A. The nature and circumstances of the offense charged

Defendant is accused of having participated in an armed carjacking that resulted in a high-speed chase and a shootout with

police. The gun used was an automatic weapon. The Government notes that Defendant faces a mandatory minimum of seven years if convicted, which creates an incentive to flee.

Though the charged offense is serious, courts also consider the defendant's role in the criminal venture. *See* United States v Alonso, 832 F. Supp. 503, 507 (D.P.R. 1993); United States v. Beeks, 2005 WL 1940014, at *4 (S.D. Ind. 2005). Defendant's alleged role was limited to driving the three other perpetrators to the location of the carjacking. He reportedly stayed in his car and was not involved in the subsequent high-speed chase and shootout. He claims that he was not armed and never threatened or accosted anyone during the incident.

As the Government notes, Defendant chose to rejoin the other offenders after the incident. Defendant, who is 18, claims to have been afraid of the older participants, one of whom allegedly pulled out a gun while he was driving. Defendant alleges he did not know his Co-defendants were planning a carjacking until they were already in his car. In response, the Government produced a video still-shot taken days before the incident that was found on Defendant's phone showing one of his Co-defendants holding a firearm. The Government argues that this negates Defendant's claim of having been surprised by the sudden carjacking plan.

The nature of this crime is serious, and so is aiding and abetting it. Nevertheless, Defendant did not personally engage in

violence, and the Court finds that this factor weighs in favor of pre-trial release.

### B. **The weight of the evidence against Defendant**

Defendant does not deny his involvement in the carjacking. He nonetheless argues that there are significant questions surrounding the extent of his knowledge about the planned attack and whether he was threatened to participate. (Docket No. 30 at 1).

As for the weapons charge, the Government notes that a .40 caliber bullet was found in the glove compartment of Defendant's car. Defendant argues, however, that this evidence was found where the other participants were sitting, which undercuts the Government's argument that he was in possession of those items. Defendant also notes that the judge in the state court case against him dismissed the case after finding lack of probable cause.

Regardless of the import or weight of the evidence proffered by the Government, the Court is not concerned with Defendant's guilt or innocence at this stage. *See* 18 U.S.C. 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence"). The Court's task is to assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. § 3142(c). As outlined below, the Court believes that such conditions exist.

### C. **Defendant's personal history and characteristics**

The Court finds that this factor weighs in favor of release pending trial. Defendant is 18. (Docket No. 15 at 1). He has no criminal history, history of violence, or reported gang affiliations. He earned his GED while working. He was part of the Puerto Rican national bowling team and even won scholarship money through those competitions. He is part of a bowling squad and was set to begin a job at a bowling alley the day after the carjacking. He was a member of his school's volleyball and basketball teams and played ping-pong as well. He appears to have been living a promising and fulfilling life until the day he took part in this carjacking.

Mr. Rodríguez also has strong ties to Puerto Rico and no foreign ties that might create a greater incentive to flee. He is a lifelong resident of Puerto Nuevo. His immediate family, which has supported him throughout this case, resides in Puerto Rico, as does much of his extended family. His only reported international travel was to the Dominican Republic for a bowling tournament in 2022. He purportedly lacks the means to flee abroad, nor is there any indication that he has international connections that could provide such means.

Furthermore, Defendant argues – and the Government does not contest – that Mr. Rodríguez repeatedly made himself available to authorities before being taken into custody and even after a state

case was dismissed. This behavior minimizes but does not eliminate the risk that Defendant might flee.

The Government contends Defendant's reported occasional marijuana use is a factor weighing in favor of detention. The Amended Pretrial Services Report also states that Defendant's grandmother took him to a psychologist in 2022 for behavioral issues, for which he received therapy for about five months. (Docket No. 15 at 4). However, the Court finds that these issues can be dealt with through appropriate bail conditions and do not tip the scale in favor of detention in this case.

### D. **The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release**

The final factor also weighs in favor of release pending trial. The Government failed to discuss why Defendant's release pending trial would pose a serious danger to any person or the community. Furthermore, the Court finds that conditions of release can reasonably assure the community's safety, as well as Defendant's appearance as required in this case. Defendant's family appears supportive and willing to assist in ensuring Defendant's cooperation. Defendant, who previously lived with his grandmother, would instead live with this father in a gated residence. His father is gainfully employed and has offered to serve as a Third-Party Custodian. Defendant would be under electronic monitoring and home detention. Defendant proposes a

$15,000 unsecured bond signed by him and co-signed by his father. The Court agrees that these conditions and the additional ones listed below would reasonably assure the community's safety and Defendant's appearance as required.

## IV. CONCLUSION

Based on the grounds stated in this *Opinion and Order*, Defendant Rodríguez shall be released subject to the following conditions:

1. Defendant must not violate federal, state, or local law while on release.

2. Defendant must advise the Court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

3. Defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the Court may impose.

4. Qualification of his father, Christian Rodríguez-Leon, as a Third-Party Custodian. Mr. Rodríguez-Leon agrees to (a) supervise Defendant, (b) use every effort to assure his appearance at all court proceedings, (c) notify the Court immediately if Defendant violates a condition of release or is no longer in the custodian's custody, and (d) surrender any firearms he possesses.

5. Defendant and his father Christian Rodríguez-Leon shall execute an unsecured bond binding them to pay the United States the sum of $15,000 dollars in the event of Defendant's failure to appear as required or to surrender as directed for service of any sentence imposed.

6. Electronic monitoring.

7. Defendant's release is conditioned upon qualification of the Third-Party Custodian and of his residence, as well as verification by the United States Probation Office of electronic monitoring device capability.

8. Home detention: Defendant shall be restricted to his father's residence at all times except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by the Probation Officer.

9. Defendant shall commence an educational program or actively seek employment.

10. Defendant shall submit to supervision by and report for supervision to the U.S. Probation Office.

11. Defendant shall surrender any passport to the U.S. Probation Office.

12. Defendant shall not obtain a passport or other international travel document.

13. Defendant shall reside at his father's residence.

14. Defendant shall not leave the jurisdiction of this District without first obtaining written permission from the Court.

15. Defendant shall avoid all contact directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including all Co-defendants of the instant case.

16. Defendant shall undergo a psychiatric evaluation and counseling. Defendant shall undergo any medical or psychiatric treatment deemed necessary by the USPO.

17. Defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapons.

18. Defendant shall refrain from excessive use of alcohol.

19. Defendant shall refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. Section 802, unless prescribed by a licensed medical practitioner.

20. Defendant shall submit to testing for a prohibited substance if required by the U.S. Probation Office or the Supervising Officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. Defendant must not obstruct or attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

21. Defendant shall participate in a program of inpatient or outpatient substance abuse therapy and counseling as deemed necessary by the U.S. Probation Office or the Supervising Officer.

22. Defendant shall report as soon as possible, to the U.S. Probation Office or the Supervising Officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

23. The Chief U.S. Probation Officer or his designee, may authorize temporary changes of address and overseas travels to the mainland U.S. only, not exceeding 15 calendar days, provided the U.S. Attorney has no objection to it. If objected, request will have to be made in writing to the Court.

24. Defendant shall not enter any airport or pier with the exception stated above.

25. Defendant shall not enter or remain at any of the named places in the instant Indictment.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of August 2023.

                                        S/ RAÚL M. ARIAS-MARXUACH
                                        United States District Judge